IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAYTON SHEPHERD, *et al.*, | ) | CASE NO. 4:14 CV 866 |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| BRIAN VOITUS, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

## Introduction

Before me by consent[1]  is a motion for summary judgment filed by defendants Officer Brian Voitus and the City of Youngstown.[2] The motion arises out of Layton Shepherd's claim under 42 U.S.C. § 1983 alleging that Voitus violated his Fourth and Fourteenth Amendment rights during Shepherd's restraint during the execution of a search warrant.[3] Shepherd has responded in opposition to the motions.[4] Voitus and Youngstown have replied to that opposition.[5]

---

[1] ECF # 8.

[2] ECF # 27.

[3] ECF # 1-1, at 2.

[4] ECF # 28.

[5] ECF # 29.

For the reasons that follow, Voitus's and Youngstown's motion for summary judgment as to the two federal claims will be granted, and the remaining Ohio state law claims will be dismissed without prejudice.

## Facts

### A. Overview

Although some facts are in dispute, they are not material. An overview of the facts, using the stipulations prepared by the parties and the facts as stated by Shepherd provides a sufficient basis for judgment as a matter of law.

### 1. The stipulated facts

In March, 2013, officers of the Youngstown Police Department executed a drug related search warrant on Layton Shepherd's home.[6] Although the warrant was aimed at Shepherd's son rather than Shepherd himself, Shepherd was the only person at the residence during the execution of the search warrant.[7]

### 2. Youngstown and Voitus dispute the following facts, but the dispute is immaterial.

While officers prepared to breach Shepherd's door, Shepherd stepped outside onto his front porch where two police officers threw him to the ground; one officer was Voitus.[8] Once on the ground, an officer identified by Shepherd as Voitus placed his knee "between

---

[6] ECF # 26.

[7] *Id.*

[8] ECF # 28 at 2.

[Shepherd's] neck and back," pulled Shepherd's arms behind his back, and handcuffed him.[9] After he was handcuffed, Shepherd was taken away from his home to a nearby lot where he stood handcuffed for approximately two hours.[10] The arrest process aggravated latent injuries that caused Shepherd physical pain and mental anguish.[11]

### 3.  Facts that are not subject to the dispute

Shepherd did not request medical attention at any time during the encounter detailed above.[12] Shepherd never filed an internal affairs complaint with the Youngstown Police Department regarding the encounter detailed above.[13]

### B.  Preliminary observation – John Doe defendants are dismissed due to lack of service.

The "John Doe" defendants named in Shepherd's complaint have not been identified and served and so these defendants are dismissed without prejudice.

"John Doe" pleadings are an acceptable practice if the "John Doe" is an actual person or entity that can be identified through discovery and served accordingly.[14] Although this sort of pleading is allowed, a plaintiff still must adhere to Rule 4(m) of the Federal Rules of Civil

---

[9] *Id.* at 3.

[10] ECF # 28-2, at 32, 40.

[11] *Id.*

[12] ECF # 26.

[13] *Id.* at 2.

[14] *Smith v. City of Euclid*, No. 1:11-CV-01208, 2012 WL 2505851, at *3 (N.D. Ohio June 28, 2012) (citation omitted).

Procedure and serve "John Doe" defendants "within 120 days after the complaint is filed."[15] Failure to serve "John Does" coupled with failure to request an extension of time to do so permits the court, on its own motion, to dismiss the action against the "John Doe" defendants without prejudice.[16]

A review of the record shows that Shepherd filed his complaint in the Mahoning County Court of Common Pleas on March 20, 2014.[17] The "John Doe" defendants have not been identified at this time, and Shepherd has asked for no extension of the service deadline. Shepherd has failed to show good cause for this long period of inaction.[18] Accordingly, the action against the "John Doe" defendants is dismissed.

## Analysis

### A.    Relevant law

### 1.    *Summary judgment standard*

A court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law.[19] The moving party always

---

[15] *Id.* (quoting Fed. R. Civ. P. 4(m)).

[16] *See*, *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007).

[17] ECF # 1-1.

[18] While a dismissal under Rule 4(m) is without prejudice, a dismissal for failure to show good cause ordered under Rule 4(m) after the expiration of the statute of limitations precludes further prosecution of the matter against the dismissed parties. *Petty*, 478 F.3d at 346 (citations omitted).

[19] Fed. R. Civ. P. 56(c).

-4-

bears the burden of prostrating the contents of pleadings, depositions, other products of discovery in order to show the district court that no issue of material fact exists.[20]

When resolved, a "material" factual dispute will have an actual outcome on the lawsuit.[21] Applying relevant evidentiary standards will determine whether or not a factual dispute is "genuine."[22] The court will view the summary judgment action "in the light most favorable to the party opposing the motion."[23]

The court should grant summary judgment if a moving party establishes each essential element of his case.[24] It follows that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[25]

If the moving party satisfies his burden, the burden shifts to the nonmover.[26] If the nonmover attempts to rely on her pleadings alone she will not survive summary judgment; the nonmover must "produce evidence that results in a conflict of material fact to be solved

---

[20] *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[21] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[22] *Id.* at 252.

[23] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[24] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[25] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[26] *Id.* at 256.

by a jury."[27] The nonmover cannot simply introduce "merely colorable" evidence or evidence that is not "significantly probative."[28] If the nonmover presents "merely colorable" or lacking "probative evidence" the court may decide the legal issue and grant summary judgment.[29] In effect, the moving party is issuing a challenge to the nonmover, requiring the nonmover to prove there is a reason to continue to trial.[30] It is wholly insufficient for a nonmoving party to illuminate "some metaphysical doubt as to the material facts" in an attempt to survive summary judgment.[31]

A proper summary judgment analysis must determine whether there are genuine, material, factual disputes that can only be rightfully resolved by a finder of fact because they may be reasonably resolved in favor of either party.[32]

## 2.    *Qualified immunity defense*

In count one of his complaint, Shepherd brings an action under 42 U.S.C. §1983, claiming that his Fourth and Fourteenth Amendment rights were violated in the course of the events detailed above.[33]

---

[27] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[28] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[29] *Id.*

[30] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[31] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[32] *Anderson*, 477 U.S. at 250.

[33] ECF # 1-1, at 2.

-6-

42 U.S.C. §1983 provides an avenue for relief if an actor, under color of state law, breaches a citizen's rights, privileges, or immunities that are guaranteed statutorily or by the constitution.[34]

In response to this claim, Voitus proffers a defense of qualified immunity. Qualified immunity is an aegis by which government officials are protected when performing discretionary functions so long as those officials do not violate clearly established rights stemming from statute or constitution.[35]

*Saucier v. Katz* is instructive when reviewing qualified immunity defenses. *Saucier* states that when a court reviews a qualified immunity defense, in the light most favorable to the plaintiff, the court should inspect the official's conduct and decide whether that conduct violated a constitutional right.[36] If a violation is present, the court should decide if the right violated was "clearly established."[37]

A "clearly established" right is a right that "contours are ... sufficiently clear so that a reasonable official would understand that what he was doing violates that right."[38] In other words, the relevant question to ask when determining whether a right is "clearly established"

_____

[34] 42 U.S.C.A. § 1983.

[35] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[36] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[37] *Id.*

[38] *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

is whether a reasonable official would know that his conduct was unlawful in the situation he was confronted with.[39]

## B.     Application of Relevant Law

### 1.     *Summary judgment for the claim regarding Voitus is granted due to the lack of a genuine issue of material fact. No excessive force usage can be found, so the claim against Voitus is dismissed.*

Voitus is entitled to judgment as a matter of law because all of the facts that are in dispute are not material. Voitus's use of force was reasonable under the circumstances and so Voitus did not violate Shepherd's Fourth Amendment right against unreasonable seizure of person; the claim against Voitus is dismissed.

### I.     *There is a lack of any genuine, material, factual dispute.*

Shepherd asserts that genuine issues of material fact exist in regards to the extent of his injuries, the reasonableness of handcuffing the otherwise peaceful Shepherd, and the identity of the officer who handcuffed him.[40]

Shepherd cites no case law on the first purported issue. The Supreme Court has instructed that the extent of the injuries to the plaintiff may reflect some use of excessive force, but the injuries must allow for an inference to be drawn that the official's conduct was so wanton that it was "tantamount to a knowing willingness that it occur."[41] Shepherd did not

---

[39] *Saucier*, 533 at 201.

[40] ECF # 28 at 8.

[41] *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

testify that he believed the officers had an intention to harm him.[42] Also, Shepherd testified that the injuries he sustained from the alleged excessive force were exacerbated latent injuries.[43] No evidence is proffered that the officers knew of Shepherd's injuries or that they willfully exacerbated them.

The second alleged dispute regarding the inconsistency in Youngstown's handcuffing policy will not be reached because the controlling Supreme Court and Sixth Circuit authority make the dispute immaterial, as discussed below.

The third alleged dispute regarding the identity of the officer who placed his or her knee into Shepherd's back is irrelevant because, taking the facts in the light most favorable to Shepherd, no part of the arrest process he was subject to constituted excessive force.

Because no genuine issues of material fact exist, Voitus and Youngstown are entitled to judgment as a matter of law.

ii.    *Voitus is entitled to qualified immunity against Shepherd's § 1983 claim because his use of force was not excessive. The action against Voitus is dismissed.*

Voitus is qualifiedly immune from Shepherd's § 1983 claim because the force he used to handcuff Shepherd was not objectively unreasonable in light of the circumstances.

---

[42] ECF # 28-2, at 49-50.

[43] *Id.*, at 8.

As stated above, a state official can raise the defense of qualified immunity against a § 1983 action.  The Supreme Court has noted that excessive force claims that require an analysis for Fourth Amendment Violation are governed by a "reasonableness standard."[44]

"Reasonableness" is given more contours by the Supreme Court in *Tennessee v. Garner*.[45] In *Garner*, "reasonableness" under the Fourth Amendment is a balancing test; the nature and quality of the infringement on the Fourth Amendment right is pitted against the importance of the governmental interest alleged to justify the intrusion.[46] The reasonableness of the officer's use of force is not to be judged with 20/20 hindsight but rather from the perspective of a reasonable officer at the scene.[47] The court reviewing a claim of excessive force must remember that police officers are often operating in dynamic environments where split-second decisions must be made.[48] The Sixth Circuit has also expanded upon the definition of "reasonableness" by adding a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."[49] In its recent decision, *Kingsley v. Hendrickson*, the Supreme Court listed

---

[44] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[45] *Tennessee v. Garner*, 471 U.S. 1 (1985).

[46] *Id.* at 8.

[47] *Graham*, 490 U.S. at 396.

[48] *Id.* at 397.

[49] *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002) (citing *Graham*).

-10-

some factors that may be helpful in determining whether force used was unreasonable.[50] Some of these factors are: perceived threat to the officer, extent of the plaintiff's injuries, whether the plaintiff was resisting arrest, and so on.[51] Although these factors may be helpful, the Supreme Court notes that this list is not exclusive and that these factors are potentially relevant, not necessarily relevant.[52]

Relevant to the current discussion, the law surrounding unreasonable use of force involves overly tight handcuffing coupled with officers ignoring pleas that the cuffs are too tight or the arrestee being struck after he is handcuffed and poses no further threat to the officers.

Detaining individuals with handcuffs while executing drug-related search warrants has been deemed proper and legal by the Supreme Court and the Sixth Circuit.[53] In *Muehler v. Mena* a resident of a house that was subject to search under a valid search warrant was detained for the duration of the search.[54] This detention was deemed "plainly permissible" and the officers' authority to detain individuals on the premises of a house subject to search

---

[50] *Kingsley v. Hendrickson*, No. 14-6368, 2015 WL 2473447, ___ U.S. ___ (2015).

[51] *Id.*, at *1 (citing *Graham*).

[52] *Id.*

[53] *Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981); *Ramage v. Louisville/Jefferson Cnty. Metro Gov't*, 520 F. App'x 341, 347 (6th Cir. 2013); *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989).

[54] *Muehler*, 544 U.S. at 96.

-11-

was described as "categorical."[55] The Supreme Court's justification for this "categorical" authority is based in *Michigan v. Summers*, in which the Court found that a valid search warrant issued on probable cause gives the officers such power.[56] The *Summers* Court also notes that, "Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."[57] The *Summers* decision breaks down the interests officers have in detaining suspects during warrant execution: the officers' interest in precluding suspects' flight if incriminating evidence is found during the search, minimizing the risk presented to officers and suspects during the search, and the possible increase in efficiency if the occupants of the premises are present during the search.[58] Overly tight handcuffing, however, may lead to a Fourth Amendment violation.

The Sixth Circuit has concluded that overly tight handcuffing is a violation of a plaintiff's Fourth Amendment right,[59] but it is necessary that the plaintiff complain about the binding for a violation to be actionable.[60]

---

[55] *Id.* at 98.

[56] *Summers*, 452 U.S. at 703.

[57] *Id.*

[58] *Id.* at 702-03.

[59] *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

[60] *Pigram v. Chaudoin*, 199 F. App'x 509 (6th Cir. 2006).

-12-

As to excessive force after cuffing, two cases are particularly relevant. In *Darnell v. Caver*, the Sixth Circuit affirmed the decision of the trial court in denying the defendant's qualified immunity claim because, after placing the plaintiff in handcuffs while he was lying face down on the ground, the defendant picked up the plaintiff's head and let it fall under its own weight, slamming into the concrete.[61] The most important wrinkle of this decision in regards to the inquiry at hand is that the Sixth Circuit agreed with the trial court on when the excessive force began; the trial court found that force was not excessive when the officers used mace on the suspect and that force was not excessive when an officer placed his knee into the suspect's back while handcuffing him.[62] Only the head dropping conduct was deemed excessive.[63] In *Pershell v. Cook*, the Sixth Circuit found that blows to an already cuffed plaintiff were objectively unreasonable.[64] But the court did not find that an officer placing his boot on the plaintiff's back was objectively unreasonable; rather, the boot simply held the plaintiff down and created a no threat environment for the officers.[65] The Sixth Circuit has even declined to find excessive force when an officer threw a visibly bandaged man to the ground in order to arrest him.[66]

---

[61] *Darnell v. Caver*, 156 F.3d 1229, 1998 WL 416000, at *3 (6th Cir. July 7, 1998).

[62] *Id.*

[63] *Id.*

[64] *Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011).

[65] *Id.*

[66] *Marcilis v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012).

Applying the law to the facts in a light most favorable to Shepherd, no excessive force was used during Shepherd's arrest. During the execution of a valid search warrant based on a confidential informant's drug buys at Shepherd's apartment,[67] an officer identified as Voitus by Shepherd dragged Shepherd to the ground, placed his knee into Shepherd's back, pulled Shepherd's arms into the required position, handcuffed Shepherd behind his back, and stood him up.[68]  Nothing in Shepherd's deposition indicates that he complained of overly tight handcuffing or that his complaints were ignored. Shepherd does not allege any post-handcuffing abuse similar to the abuse involved in the cases discussed above. Because the officers were executing a drug-related search warrant, their interests in ceasing any flight of suspects, limiting destruction of evidence, and ensuring the safety of the officers and

---

[67] ECF # 26 at 1.

[68] ECF # 28-2, at 47; ECF # 28 at 3. ECF # 28 at 3 refers to Shepherd's affidavit submitted after his deposition that Youngstown believes does not create an issue of material fact because it conflicts with prior testimony at Shepherd's deposition. This is true, under Sixth Circuit law, but this affidavit only contradicts Shepherd's identification of Voitus as the restraining officer. As no excessive force usage can be found, the identity of the officer who handcuffed Shepherd is not a material fact and does not create a relevant dispute regardless of the conflicting affidavit.

That is not to say, however, that the conflict between Shepherd's deposition testimony and his subsequent affidavit contrary to that testimony has no significance here. As an alternative ground, Shepherd's inability to identify Voitus on deposition as the officer who handcuffed him, and his deposition testimony that the officers who placed him on the ground and handcuffed wore plain clothes, whereas Voitus wore tactical gear at the scene, does alternatively warrant summary judgment in Voitus's favor.

Although Shepherd attempted to overcome this deposition testimony by way of a later affidavit, a material issue of fact cannot be created by submitting an affidavit conflicting prior deposition testimony. *A.C. ex rel. J.C. v. Shelby Ct. Bd of Ed.*, 711 F.3d 687, 702 (6th Cir. 2013).

-14-

suspects were served with the detention of Shepherd. As noted above, drug related search warrant scenarios can become incredibly dangerous in a moment's time and so the rapidity and means by which Shepherd was detained was a reasonable exercise of force.

Shepherd cites *El-Ghazzawy v. Berthiaume*,[69] an Eighth Circuit case, in an attempt to argue that the handcuffing of Shepherd was unnecessary because Shepherd was not resisting and, therefore, the handcuffing was an exercise of excessive force.[70] The facts of *El-Ghazzawy* involve a patron of a pawn shop who was arrested as soon as the officer came in contact with him. The court engaged in an excessive force analysis, largely applying principles from *Terry v. Ohio* and *Graham v. Connor*.[71] The court concluded that the immediate handcuffing of El-Ghazzawy was a violation of his Fourth Amendment rights.[72] The holding of *El-Ghazzawy* was never cited or adopted by the Sixth Circuit. Shepherd fails to treat the fact that he was not involved in a Terry stop situation like El-Ghazzawy. Rather, Shepherd was handcuffed during a drug-related search warrant execution. The Supreme Court and Sixth Circuit precedent discussed above clearly affords officers authority to detain suspects in Shepherd's situation.

---

[69] *El-Ghazzawy v. Berthiaume*, 636 F.3d 452 (8th Cir. 2011).

[70] ECF # 28 at 6.

[71] *El-Ghazzawy*, 636 F.3d at 457.

[72] *Id.* at 459.

-15-

One issue that was not raised by either party arises out of Shepherd's claim that he was handcuffed for two hours.[73] The Sixth Circuit has found that detention after a search has been completed may constitute excessive force.[74] The length of the search is not revealed by testimony from Voitus or Shepherd and does not appear in the stipulated facts. Shepherd notes, in his deposition, that an officer stood with him for the two hours while he claims he was handcuffed, but he does not identify that officer as Voitus in his deposition or in the affidavit submitted later.[75] As stated above, this fact was not acknowledged in briefs from either party and simply creates a "metaphysical" point of discord like the one found in *Matsushita*. Because the "John Doe" defendants have been dismissed because of Shepherd's lack of service and, as to a § 1983 claim, "[e]ach defendant's liability must be assessed individually based on his own actions," this issue cannot create a matter of genuine, material, factual dispute.[76]

Even when Shepherd's recollection of the event is viewed in favorable light, no Fourth Amendment violation exists. Voitus was exercising his authority to control a dynamic and possibly dangerous scene in a reasonable manner.

### 2.   *Summary judgment is granted on the remaining federal claim against Youngstown. Finding no constitutional violation in the interaction between Shepherd and Voitus, there can be no Monell claim.*

---

[73] ECF # 28-2, at 32.

[74] *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

[75] ECF # 28-2, at 31-32; ECF # 28 at 3.

[76] *Binay*, 601 F.3d at 650; *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008).

Shepherd's claim against Youngstown must be dismissed because no constitutional violation could be found within the interaction between Voitus and Shepherd.

*Monell v. Department of Social Services*[77] provides citizens a means to take action against cities if the citizens' constitutional rights have been violated. To hold a city accountable for a § 1983 claim, a plaintiff must prove that a violation of a federal right occurred because of the city's illegal policy or custom.[78]

Because no violation of Shepherd's constitutional rights occurred in the course of his interaction with Voitus, there is no basis for a *Monell* claim.

Accordingly, Shepherd's claim against Youngstown is dismissed.

**3.    *With the prevailing federal claims resolved, this Court, exercising its discretion under 28 U.S.C. § 1367(c), dismisses all remaining state law claims.***

With all federal claims dismissed, the remaining state law claims are dismissed.

Exercising its discretion under 28 U.S.C. § 1367(c), a federal court may dismiss state law claims without addressing the merits of these claims if all federal claims have been dismissed. In pertinent part, § 1367(c) states: The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (c) if the district court has dismissed all claims over which it has original jurisdiction.[79] The Supreme Court has stated that a

---

[77] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[78] *Id.*

[79] 28 U.S.C.A. § 1367.

-17-

district court's decision to retain state law claims after federal claims have been dismissed is purely discretionary.[80]

Accordingly, this Court exercises its discretion to dismiss all remaining state law claims without prejudice.

## Conclusion

While Shepherd's injuries are unfortunate, his claim against Voitus cannot survive summary judgment.  The relevant Supreme Court and Sixth Circuit authorities hold that law enforcement officers have valid reasons for detaining individuals during the execution of a search warrant and that placing a knee into a suspect's back to handcuff him does not constitute unreasonable force. Absent a violation of federal rights during the incident in question, the City of Youngstown is also entitled to summary judgment.

The "John Doe" defendants are dismissed for lack of service.

Under 28 U.S.C. § 1367(c), the Court dismisses the remaining state law claims without prejudice.

IT IS SO ORDERED.


Dated: July 29, 2015                                    s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[80] *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 174 (1997).

-18-